UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 09-CV-0061-CVE-FHM |
| GEORGE DAVID GORDON, JOSHUA WAYNE LANKFORD, and DEAN JOSEPH SHEPTYCKI, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court is Defendant David Gordon's Motion to Dismiss the Complaint (Dkt. # 9). Gordon argues that the complaint filed by the Securities and Exchange Commission (SEC) (Dkt. # 2) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Gordon further contends that the SEC alleges market manipulation and the sale of unregistered securities, but fails to plead facts pertaining to fraud with particularity, as required by Federal Rule of Civil Procedure 9(b). For the reasons set forth below, Gordon's motion is denied.

**I.**

The SEC alleges that Gordon, acting in concert with named co-defendants and others, engaged in a "market manipulation scheme." Dkt. # 2, at 5. According to the SEC, Gordon and co-defendant Joshua Wayne Lankford merged operating companies into shell companies that they controlled, creating National Storm Management Group, Inc. (NLST), a Nevada corporation with its principal place of business in Glen Ellyn, Illinois, and Deep Rock Oil and Gas, Inc. (DPRK), a

Nevada corporation with its principal place of business in Tulsa, Oklahoma. Id. at 4-5. From 2005 to the present, NLST's stock has been quoted on the Pink Sheets and, until August 2006, traded under the symbol NLST. Id. at 4. NLST was created through a reverse merger with another company, The 18th Letter, Inc., and purports to be a "storm restoration firm specializing in residential home repair from the effects of wind and hail damage." Id. DPRK has also been quoted on the Pink Sheets since 2005. Id. DPRK was formed through a reverse merger with another company, Cherokee Energy Services of Tulsa, Inc., and purports to be "an oil and gas exploration and production company." Id. According to the complaint, Gordon and Lankford used fraudulent legal opinion letters in order to obtain the removal of the restrictive legends from millions of shares of NLST and DPRK stock. Id. at 5. The legal opinion letters misrepresented the identity of the owners of the shares of stock, the length of time that they had owned the stock, and the requirements for removal of the restrictive legend. Id.

The SEC alleges that, to generate trading volume history and raise the share price for DPRK, Gordon and Lankford placed matched orders. Id. Matched orders are "coordinated transaction[s], in which an order for the purchase/sale of stock is entered with the knowledge that a contra order (sale/purchase) for substantially the same quantity of shares of the same stock, at substantially the same time and price, has been or will be entered by another person, with the intent that the orders will execute against each other." Id. According to the SEC, matched orders artificially raised the market price for shares of DPRK stock. Id. at 6.

With respect to the third company alleged to have been part of Gordon's market manipulation scheme, Gordon and Lankford controlled virtually all of the unrestricted stock of Global Beverage Solutions, Inc. (GBVS), a Nevada corporation with its principal place of business

in Tulsa, Oklahoma. Id. at 4, 5. From in or about 2005 through 2006, GBVS' securities were registered with the SEC, and its shares trade on the over-the-counter bulletin board under the symbol "GBVS." Id. at 4.

The SEC alleges that Gordon and Lankford hired co-defendant Dean Joseph Sheptycki to promote the stocks of NLST, DPRK, and GBVS (collectively, the Target Stocks). Id. at 6. Sheptycki sent a mass public distribution via facsimile projecting a large price increase for the Target Stocks and recommending that the fax recipients purchase stock in the Target Stocks. Id. Sheptycki was promised approximately 10% of the net trading proceeds. Id. According to the complaint, Gordon and Lankford also "orchestrated the promotion of the Target Stocks through the mass distribution of spam emails touting the Target Stocks to the public." Id. The spam emails, like the faxes sent by Sheptycki, projected huge price increases for the Target Stocks and recommended that the recipients of the spam emails purchase stock. Id. In addition, Gordon and Lankford are alleged to have promoted DPRK and GBVS stock by mass distributing a "Magalog" projecting large price increases and recommending that the recipients purchase the stock. Id. The SEC specifically alleges that the promotional materials for NLST and DPRK "exploited the devastating effects of Hurricanes Katrina and Rita." Id. As a result of the promotional faxes, spam emails, and Magalogs, there was an increase in trading volume and market price for the Target Stocks. Id.

The SEC alleges that Gordon and Lankford owned the majority of shares of the Target Stocks, which allowed them to control the share price and ensure that the market price remained artificially elevated. Id. at 7. Specifically, Gordon and Lankford coordinated trading to prevent too much stock from entering the market during the promotional campaign. Id. They also provided

"buy-side support when there were too many other retail investors selling stock." Id. At the conclusion of the promotional campaign for the Target Stocks, the market prices dropped. Id.

According to the complaint, Gordon and his co-defendants sold NLST stock from August 2005 through October 2005, DPRK from August 2005 through March 2006, and GBVS from December 2005 through December 2006. Id. Defendants are alleged to have derived more than $20 million in illegal trading profits. Id.

## II.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim" sufficient to give the defendant fair notice of the claim and its factual basis. The "plain statement" must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. For purposes of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Id. at 555-56; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d

1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

Under the Federal Rules of Civil Procedure there is a heightened pleading requirement for allegations of fraud. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) applies where fraud is an essential element of the claim and where the plaintiff alleges fraud even though it is not a statutory element of the offense . . . ." SEC v. Tambone, 550 F.3d 106, 118 (1st Cir. 2008). When alleging fraud, the circumstances constituting fraud must be stated with particularity. Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other condition of mind of a person, may be averred generally." Id. A party alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Tal v. Hogan, 453 F.3d 1244, 1263 (10th Cir. 2006) (quoting Koch v. Koch Indus., 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotations omitted)).

The purpose of Rule 9(b)'s particularity requirement is to "afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . . ." Koch, 203 F.3d at 1236 (internal quotation marks and citation omitted) (alterations in original). "Rule 9(b)'s particularity requirement, however, is not absolute or limitless; a plaintiff need not go so far as to give the defendant a pretrial memorandum containing all the evidentiary support for plaintiff's case." Schrag v. Dinges, 788 F. Supp. 1543, 1550 (D. Kan. 1992) (citation omitted).

5

### III.

In an eleven-page complaint, the SEC alleges that Gordon violated: Rule 10b-5, 17 C.F.R. § 240.10b-5, which was promulgated to implement section 10(b) of the Securities Exchange Act of 1934 (the Exchange Act), 15 U.S.C. § 78j(b); section 17(a) of the Securities Act of 1933 (the Securities Act), 15 U.S.C. § 77g(a); and sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a), (c).  Gordon argues that the SEC fails to plead fraud with particularity and fails to state a claim for violations of sections 5(a) and (c).

**A.     Claims Under the Exchange Act § 10(b) and Rule 10b-5 and § 17(a) of the Securities Act[1]**

The Exchange Act was enacted to "insure honest securities markets and thereby promote investor confidence," and the Supreme Court has held that it "should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes." SEC v. Zandford, 535 U.S. 813, 819 (2002) (citing United States v. O'Hagan, 521 U.S. 642, 658 (1997)).  Generally, to state a claim under § 10(b) and Rule 10b-5, plaintiff must allege that "the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused injury to the plaintiff." Lawrence v. Cohn, 325 F.3d 141, 147 (2d Cir. 2003) (citation omitted).  Section 10(b) prohibits not only material misstatements, but also manipulative acts. Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 177 (1994).  The Tenth Circuit has held that "Rule 9(b)

---

[1]   Because § 17(a) is "nearly identical" to Rule 10b-5, the two sections can be discussed together. See Tambone, 550 F.3d at 118.  However, there are several distinctions that may be relevant here.  Specifically, § 17(a) pertains to the sale or offering of securities by "brokers or dealers," while § 10(b) applies to "any person" in connection with the sale or purchase of securities. Id.

requires only the identification of the circumstances constituting fraud, and does not require any particularity in connection with an averment of intent, knowledge or condition of mind." Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997) (citation omitted). Thus, to prove scienter, the SEC must show that defendants acted with intent, knowledge or a high degree of recklessness, see Aaron v. SEC, 446 U.S. 680, 690-97 (1980), but need only allege scienter generally. See Tambone, 550 F.3d at 119 (noting that the standard for stating a fraud claim is higher in the context of private securities litigation)). See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 80-81 (2006).

The SEC alleges that Gordon violated Rule 10b-5, not by a misrepresentation or material omission, but rather by participating in the use of a manipulative or deceptive device or by a scheme to defraud. Subsections (a) and (c) of Rule 10b-5 prohibit the use of "any device, scheme, or artifice to defraud" or participation "in any act, practice, or course of business" that would perpetrate fraud on investors. In re Pfizer Inc. Securities Litigation, 584 F. Supp. 2d 621, 640 (S.D.N.Y. 2008). In a market manipulation scheme, "the deception arises from the fact that investors are misled to believe that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators." ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 100 (2d Cir. 2007). A claim for market manipulation is a claim for fraud and, thus, must be pled with particularity under Rule 9(b). Id. at 102 (citing Internet Law Library, Inc. v. Southridge Capital Mgmt., 223 F. Supp. 2d 474, 486 (S.D.N.Y. 2002)). However, at the early stages of a litigation, "plaintiff need not plead manipulation to the same degree of specificity as a plain misrepresentation claim." Id. A plaintiff alleging market manipulation in violation of Rule 10b-5(a) and (c) must specify "what manipulative acts were performed, which defendants performed

7

them, when the manipulative acts were performed and what effect the scheme had on the securities at issue." In re Global Crossing, 322 F. Supp. 2d 319, 329 (S.D.N.Y. 2004). Manipulative practices include "wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." In re Federal Nat. Mortg. Ass'n Securities Litigation, 503 F. Supp. 2d 1, 7 n.4 (D.D.C. 2007) (citing Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 474-75 (1977)).

Gordon generally argues that the complaint contains conclusory statements and lacks particularity. The Court disagrees. The complaint contains sufficient facts to put defendant on notice of the alleged scheme. While fraud must be pled with particularity, the SEC need not present Gordon with all of its evidence against him. See Schrag, 788 F. Supp. at 1550 (plaintiff is not required to present defendant with a "pretrial memorandum containing all the evidentiary support for plaintiff's case."). Here, the SEC's complaint sets forth the manipulative acts that were performed, that Gordon participated in those acts, when the acts were performed, and the effect the scheme had on the subject securities. See In re Global Crossing, 322 F. Supp. 2d at 329. Specifically, the SEC alleges that Gordon participated in a market manipulation scheme by using mass mailings, emails, and faxes to generate interest in the Target Stocks. The complaint further alleges that Gordon placed matched orders and coordinated trading of the Target Stocks so as not to dump too much stock into the market while he and others were promoting the Target Stocks. The complaint sets forth the approximate dates of the alleged scheme and alleges that the scheme had the effect of artificially inflating the share prices of the Target Stocks. Accordingly, Gordon's arguments with respect to particularity and sufficiency of the complaint are without merit.

8

**B.      Claims Under §§ 5(a) and (c) of the Securities Act**

The SEC also alleges that Gordon violated §§ 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a), (c).  To establish a prima facie case of a violation of § 5, the SEC must prove: "(1) no registration statement was in effect with respect to the securities at issue, (2) the defendants sold or offered to sell the securities, and (3) interstate transportation, communications, or the mail was used in connection with the sale or offer of sale."  SEC v. Reynolds, No. 08-384, 2008 WL 3850550, at *4 (N.D. Tex. Aug. 19, 2008) (citing SEC v. Continental Tobacco Co. of S. Car., 463 F.2d 137, 155 (5th Cir. 1972)).  There is no scienter requirement for § 5.  See SEC v. L&S Petroleum, Inc., 444 F. Supp. 38, 40-41 (W.D. Okla. 1977).  Here, the SEC has alleged that no valid registration statement or exemption from registration was filed or in effect for any of the Target Stocks.  The SEC further alleged that the defendant sold and/or offered to sell the Target Stocks, and the Target Stocks were sold via the over-the-counter market, which involves the use of interstate communications.  Accordingly, the SEC has alleged sufficient facts to establish a prima facie violation of § 5 of the Securities Act.  Despite Gordon's arguments to the contrary, the SEC's allegations pertaining to §§ 5(a) and (c) are not "keyed to the allegation that restrictive legends were removed from the shares of [NLST] and [DPRK] as a result of fraudulent opinions."  Dkt. # 9-2, at 19 n.10.  Rather, the complaint does not specifically tie its § 5 allegations to the removal of the restrictive legends; it simply states that the Target Stocks were not registered, yet were offered for sale using interstate communications.  The SEC has sufficiently alleged violations of §§ 5(a) and (c), and Gordon's motion to dismiss is denied.

**IT IS THEREFORE ORDERED** that Defendant David Gordon's Motion to Dismiss the Complaint (Dkt. # 9) is **denied.**

**DATED** this 11th day of June, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT