UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | ) | |
| COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-0061-CVE-FHM |
| | ) | |
| GEORGE DAVID GORDON, | ) | |
| JOSHUA WAYNE LANKFORD, and | ) | |
| DEAN JOSEPH SHEPTYCKI, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court is Plaintiff's Motion for Summary Judgment (Dkt. # 84). Plaintiff

Securities and Exchange Commission (SEC) argues that defendant George David Gordon is barred

from relitigating issues that were conclusively decided in his criminal prosecution, and that the SEC

is entitled to summary judgment under the doctrine of collateral estoppel. Gordon responds that the

issues resolved in his criminal case were not identical to the issues raised in this civil action, and that

he did not have a full and fair opportunity to litigate any issue in the criminal case. Dkt. # 96.

### I.

On January 15, 2009, the United States Attorney for the Northern District of Oklahoma filed

a 24 count indictment alleging that Gordon, Richard Clark, Joshua Wayne Lankford, Dean

Sheptycki, and James Reskin engaged in an illegal "pump and dump" scheme to artificially inflate

the price of certain target stocks and later sell their own stock in the target companies at inflated

prices. United States of America v. Gordon et al., 09-CR-13-JHP (N.D. Okla.). Gordon was

charged with conspiring to commit an offense against the United States in violation of 18 U.S.C. §

371 (count one), wire fraud in violation of 18 U.S.C. § 1343 (counts two to ten and count twenty-three), violations of section 10(b) of the Securities Exchange Act of 1934 (Exchange Act) and Rule 10b-5 promulgated thereunder (counts eleven to fifteen), engaging in monetary transactions in criminally derived property in violation of 18 U.S.C. § 1957(a) (counts sixteen to twenty-one), making false statements to the SEC in violation of 18 U.S.C. § 1001 (count twenty-two), and tampering with a witness in violation of 18 U.S.C. § 1512. Dkt. # 84-1, at 1-30.

The government alleged that Gordon and the other defendants targeted three companies - National Storm Management Group, Inc. (NLST), Deep Rock Oil and Gas, Inc. (DPRK), and Global Beverage Solutions, Inc. (GBVS) (collectively the Target Stocks) - for a pump and dump scheme to manipulate the market for the Target Stocks and sell their own stock at inflated prices. NLST was a storm reconstruction company with no publicly traded stock, but it merged with a shell company, "18th Letter, Inc.," that had no assets but did have stock available for trading. Dkt. # 84-1, at 3. This process is called a reverse merger. DPRK was formed through a reverse merger between Cherokee Energy Services of Tulsa, Inc. and a shell company called Deep Rock Oil and Gas LLC. Dkt. # 84-1, 3. Following the reverse merger, DPRK had stock available for public sale. GBVS was formerly known as Pacific Peak Investments, but changed its name to GBVS on October 10, 2005 and had publicly available stock under that name. Id. Gordon was an attorney and licensed accountant in Tulsa, Oklahoma, and the government alleged that Gordon authored or caused to be issued false opinion letters allowing the removal of restrictions on the trading of NLST and DPRK stock. Id. at 9-10. The government alleged that Gordon and others gained control of GBVS by purchasing millions of shares of GBVS stock. Id. at 10. Gordon and his co-defendants engaged in stock transactions to create a trading history for the Target Stocks and sent out false promotional

materials such as fax and e-mail blasts to "pump" the Target Stocks.  Id. at 11-14.  The government

alleged that, beginning in September 2005, the conspirators began selling their stock in the target

companies at inflated prices.  In particular, Gordon began selling his shares of NLST and GBVS at

inflated prices.  Id. at 14-15.  On September 20, 2005, Gordon gave a false statement to the SEC

concerning his knowledge of fax blasts promoting DPRK stock.  Id. at 17.  These actions formed

the basis for the conspiracy claim against the defendants and for the alleged violations of § 10b of

the Exchange Act and Rule 10b-5.

On February 10, 2009, the SEC filed this civil enforcement action against Gordon,

Sheptycki, and Lankford alleging violations of section 10(b) of the Exchange Act and Rule 10b-5,

as well as violations of sections 5(a), 5(c), and 17(a) of the Securities Act of 1933.  Dkt. # 2.

Gordon retained counsel to represent him in this case and filed a motion to dismiss (Dkt. # 9), which

was denied.  Dkt. # 19.  The United States filed a motion to intervene and asked the Court to stay

this civil enforcement action while the related criminal case was pending, and Gordon opposed the

United States' request to stay this case.  The SEC did not oppose the United States' motion to stay.

The Court allowed the United States to intervene and granted the motion to stay the civil

proceedings.  The Court found that one of the key factors supporting a stay was the overlap of issues

between the civil and criminal cases:

> Here, both the civil complaint and the indictment allege that Gordon and his co-
> defendants perpetrated a "pump and dump" scheme involving the same three Target
> Stocks and the same manipulative means.  Both allege identical conduct in obtaining
> control of the Target Stocks, engaging in coordinated trading, and promoting the
> companies through false and misleading advertisements.  The Court finds that there
> is a complete overlap of issues between the civil and criminal cases.

Dkt. # 26, at 7.  The Court also noted that staying the civil case "would avoid a duplication of efforts

and a waste of judicial time and resources."  Id. at 9.

3

The criminal case proceeded to trial and Gordon was convicted on 23 of the 24 charges alleged in the indictment.[1]  Gordon was sentenced to a total of 188 months imprisonment and was ordered to pay $6,150,136.79 in restitution.  Dkt. # 84-1, at 36.  The court also entered a joint and several criminal forfeiture money judgment against Gordon and Clark in the amount of $43,927,809.95, because the government established at trial that this amount represented the "stock sale proceeds traceable to the conspiracy."  United States of America v. Gordon et al., 09-CR-13-JHP (N.D. Okla.), Dkt. # 313, at 2.  The SEC asked the Court to lift the stay of the civil enforcement proceedings and Gordon opposed the SEC's motion to lift the stay.  Gordon stated that he had appealed his criminal convictions and anticipated that his convictions would be set aside on appeal.  Dkt. # 28, at 2.  The Court granted the SEC's motion to lift the stay and entered a scheduling order.  Gordon's attorneys filed a motion to withdraw as counsel, because Gordon owed his attorneys a considerable sum for their work in the related criminal case and Gordon had no assets with which to pay them.  Dkt. # 29.  The Court allowed Gordon's attorneys to withdraw as counsel of record, and gave Gordon 20 days to obtain new counsel or notify the Court that he would represent himself.  Dkt. # 30.  Gordon filed a notice stating that he would represent himself.  Dkt. # 36.  He filed a counterclaim (Dkt. # 38) and a motion to compel (Dkt. # 81) seeking the production of documents allegedly seized from his law office in 2007.  However, the Court determined that discovery should be stayed, because the SEC had stated that it would file a motion for summary judgment asserting that defendant was prohibited from relitigating any factual issue in this civil enforcement proceeding under the doctrine of collateral estoppel.  Dkt. # 80.

---

[1]     Count sixteen of the indictment was dismissed by the government, and this count was not submitted to the jury.

The SEC filed its motion for summary judgment (Dkt. # 84) and argued that all factual issues necessary to resolution of its claims in this civil enforcement proceeding were conclusively resolved against Gordon in the related criminal case.   At a minimum, the SEC has identified the following allegations that were made in the indictment in the criminal case and in the complaint in this civil enforcement action:

> Defendant is charged with a pump and dump scheme to manipulate the share prices of three penny stocks traded on the over-the-counter market; [NLST], [DPRK], and [GBVS]  . . . .
>
> The scheme was perpetrated from spring 2005 through December 2006.
>
> Gordon used nominee brokerage and bank accounts to conceal the fraud.
>
> Gordon utilized fraudulent legal opinion letters to cause the transfer agent to remove the restrictive legends from NLST and DPRK share certificates so that these shares could be freely traded.
>
> The legal opinion letters were fraudulent because they misrepresented the identities of the owners of the shares and the length of time the shares were owned.
>
> Gordon engaged in matched order trading that had no legitimate economic purpose and was intended to artificially increase the share price of DPRK.
>
> Gordon directed the public promotion of the Target Stocks through the mass distribution of spam emails recommending the purchase of the Target Stocks.
>
> At the same time Gordon was conducting the mass marketing promotion of the Target Stocks through spam emails and Magalogs recommending the purchase of the shares, he sold shares of NLST, DPRK, and GBVS at artificially inflated prices.
>
> Gordon and Lankford coordinated their sales of the Target Stocks to avoid flooding the market and provided buy-side support to maintain the artificially inflated share prices.
>
> Gordon sold NLST shares between August 2005 and October 2005; DPRK shares between August 2005 and March 2006; and, GBVS shares between December 2005 and December 2006.
>
> Gordon's scheme derived illegal trading profits from the sale of the Target Stocks.

Dkt. # 84-1, at 45-46.[2]  The SEC asks the Court to award disgorgement of $40,072,806.97 and prejudgment interest of $10,307,489.92, a civil monetary penalty in an amount determined by the Court, and injunctive relief.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could

---

[2]      The Court will separately consider whether collateral estoppel bars Gordon from relitigating these factual issues, and recites the allegations merely to show factual overlap between the criminal and civil cases.

reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

The SEC argues that collateral estoppel prevents Gordon from relitigating any issue that was resolved against him by the jury in Gordon's criminal case, and all of the necessary facts to find Gordon liable were conclusively resolved in the criminal proceedings.  Dkt. # 84, at 11-15.  Gordon responds that some of the Target Stocks could have been exempt from SEC registration requirements and he did not present all of his defenses as to these exemptions during the criminal trial, and collateral estoppel does not apply.   Dkt. # 96, at 9-10.   Gordon also claims that ordering disgorgement or imposing a civil fine would violate his rights under the United States Constitution. Id. at 15-23.

## A.

The SEC asserts that the factual issues necessary to hold Gordon liable in this civil enforcement action were decided in Gordon's criminal case, and that issue preclusion should be applied to prevent Gordon from relitigating the same issues in this case.  Gordon argues that the issues in this case and the criminal case are not identical, and that he did not have a full and fair opportunity to litigate any issue in the criminal case. Dkt. # 96, at 9-15.  He also claims that he has appealed the judgment in the criminal case and that judgment is not final for the purpose of applying collateral estoppel. Id. at 10-11.

Issue preclusion or collateral estoppel prevents relitigation of issues that were decided in a previous case, and the preclusive effect of a federal court judgment, even if the underlying claims were created under state law, is determined by reference to federal law. Orjias v. Stevenson, 31 F.3d 995, 1010 (10th Cir. 1994). "When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Dodge v. Cotter, 203 F.3d 1190, 1198 (10th Cir. 2000) (quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)). "It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding." Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 568 (1951). The party raising issue preclusion has the burden to prove four elements:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been fully adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1093 (10th Cir. 2003). Issue preclusion bars relitigation of an issue, even if the issue "arises when the party is pursuing or defending against a different claim." Park Lake Resources Ltd. Liability Co. v. United States Dept. of Agriculture, 378 F.3d 1132, 1136 (10th Cir. 2004). When multiple cases between two parties involved substantially similar subject matter, issue preclusion may be used to prevent the relitigation of factual and legal issues identical to both cases. Jarvis v. Nobel/Sysco Food Servs. Co., 985 F.2d 1419, 1425 (10th Cir. 1993). Gordon does not dispute that he was a party in the criminal case and that he is a party in this civil enforcement action, and the third element is uncontested. Dkt. # 96, at 9. However,

Gordon argues that the SEC has not met its burden as to any other element necessary for the application of issue preclusion.

Gordon disputes that the criminal case and the civil enforcement action involve identical issues, because the criminal case was largely based on material omissions in required public disclosures but the disclosures were not mentioned in the SEC's complaint. Dkt. # 96, at 9.  He also argues that the government did not allege a criminal claim under § 5 of the Securities Act, and the SEC may not rely on issue preclusion to establish of a violation of § 5 in this case.  Id. at 10. Gordon does not cite any authority to support his second argument and this argument has been rejected by other courts. Contrary to Gordon's assertions, issue preclusion frequently applies when parties litigate different claims for relief, because it relieves the parties "of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication."  Allen v. McCurry, 449 U.S. 90, 414-15 (1980); see also Gener-Villar v. Adcom Group, Inc., (1st Cir. 2005) (issue preclusion prevents relitigation of an issue in a subsequent action if the issue was essential to the judgment in a prior case even if the claims for relief are different); United States v. Bailey, 957 F.2d 439, 443 (7th Cir. 1992) (issue preclusion rather than claim preclusion is the appropriate doctrine to prevent relitigation of identical issues in different claims for relief).  The Court must determine if the facts determined in the criminal case establish a violation of § 5 of the Securities Act, but the mere fact that the government did not allege a § 5 violation in the criminal case is not a bar to applying issue preclusion in this case.

The SEC argues that the criminal case and this civil enforcement action arise out of the same fraudulent scheme and that the material factual issues proven beyond a reasonable doubt in the criminal case also establish Gordon's liability in this case.  A comparison of the charging documents

shows that both cases are based on an alleged pump and dump scheme involving the same Target

Stocks and that Gordon was an integral part of the scheme from the beginning.  Dkt. # 2, at 1; Dkt.

# 84-1, at 5-6.  Gordon caused false opinion letters to be issued that allowed for the removal of

trading restrictions on NLST and DPRK stock.  Dkt. # 2, at 5; Dkt. # 84-1, at 9-10.  Gordon and

Lankford gained control of virtually all of GBVS' unrestricted stock and engaged in fraudulent

matched order transactions to create a trading history for GBVS stock and also to raise the stock

price.  Dkt. # 2, at 5; Dkt. # 84-1, at 15-16.  Gordon and others conspired to pump up the value of

the Target Stocks by engaging in controlled buying and selling of stocks and by distributing

promotional materials to encourage buyers on the open market to purchase the Target Stocks.  Dkt.

# 2, at 6-7; Dkt. # 84-1, at 11-14.  When the price of the Target Stocks rose, Gordon and his co-

conspirators sold their shares of the Target Stocks according to a coordinated and predetermined

plan to keep the market price from dropping too quickly, and the conspirators derived approximately

$20 million in illegal trading profits.  Dkt. # 2, at 7; Dkt. # 84-1, at 14-17.

These allegations formed the basis for the government's and SEC's § 10(b) and Rule 10b-5

claims against Gordon in both cases.[3]  Dkt. # 2, at 8 (SEC's first claim for relief); Dkt. # 84-1, at 19

(counts eleven through fifteen of the indictment).  The jury found Gordon guilty of violating § 10(b)

and Rule 10b-5 and convicted Gordon of counts eleven through fifteen of the indictment.  Dkt. # 84-

1, at 32.  The jury instructions show that the jury was instructed that it must find each of the

following elements beyond a reasonable doubt: (1) defendant committed a fraudulent act in

---

[3]     The scope of § 10(b) of the Exchange Act and Rule 10b-5 are co-extensive and the elements
of each claim are identical.  <u>SEC v. Maxxon, Inc.</u>, 465 F.3d 1174 (10th Cir. 2006).  Thus,
there was no difference in the proof required to establish a violation of § 10(b) and Rule 10b-
5.

connection with the purchase or sale of a security; (2) defendant acted knowingly, willfully, and with intent to defraud; and (3) defendant used an instrumentality of interstate commerce in furtherance of his scheme to defraud. United States v. George David Gordon et al., 09-CR-13-JHP (N.D. Okla.), Dkt. # 222 at 72-82. The jury was also specifically instructed on Gordon's defense that the Target Stocks were exempt from registration requirements under the Securities Act. Id. at 83-84. The elements of a civil Rule 10b-5 claim are identical, and the key difference is that the government must meet a higher burden of proof to convict a defendant of a criminal violation of Rule 10b-5. See SEC v. Blackwell, 477 F. Supp. 2d 891, 899 (S.D. Ohio 2007); SEC v. Svoboda, 409 F. Supp. 2d 331, 340 (S.D.N.Y. 2006).

The Court finds that Gordon's convictions for criminal violations of § 10(b) of the Exchange Act and Rule 10b-5 were based on the same factual and legal issues necessary to establish his civil liability to the SEC in this case. If this case were submitted to a jury, such a jury would be required to hear the same evidence and resolve the same factual issues. Gordon argues that he may be able to show that some of the Target Stocks were exempt from the SEC's registration requirements. Dkt. # 96, at 9-10. However, he litigated this precise issue in the criminal trial, a jury instruction was given on this issue, and the jury rejected Gordon's defense. The SEC is also correct that Gordon fails to identify what alleged exemptions might apply and it is Gordon's burden to come forward with evidence in opposition to a motion for summary judgment. See Dkt. # 100, at 4. The Court will consider Gordon's arguments as to the other elements of issue preclusion, but the government has met its burden to show that identical factual issues as to § 10(b) of the Exchange Act and Rule 10b-5 are present in Gordon's criminal case and this civil enforcement action.

The SEC argues that its claim against Gordon under § 17(a) of the Securities Act is based on the same facts needed to establish a violation of § 10(b) of the Exchange Act and Rule 10b-5. The government did not charge Gordon with violating § 17(a) of the Securities Act in the criminal case, but the Tenth Circuit has found that § 10(b) and § 17(a) require "substantially similar proof" in order to find a defendant liable.  SEC v. Wolfson, 539 F.3d 1249, 1256 (10th Cir. 2008).  The key difference between § 10(b) and § 17(a) "lies in the element of scienter, which the SEC must establish under § 17(a)(1), but not under § 17(a)(2) or § 17(a)(3)," while "§ 10(b) always requires a showing of scienter."  Id. at 1256-57.  Another difference between the statutes is that § 10(b) applies  "to acts committed in connection with a *purchase or sale* of securities while § 17(a) applies to acts committed in connection with an *offer or sale* of securities."  SEC v. Maio, 51 F.3d 623, 631 (7th Cir. 1995).  If the plaintiff can establish a violation of § 10(b), the plaintiff has necessarily made a showing of scienter and the defendant will also be liable for violating § 17(a) if that statute is applicable.  Teamsters Local 282 Pension Trust Fund v. Angelos, 762 F.2d 522, 531 (7th Cir. 1985). In this case, the jury in the criminal case convicted Gordon under § 10(b) and necessarily made a finding that Gordon acted with the required scienter to violate federal securities laws.  This is the same scienter requirement needed to establish a violation of § 17(a)(1).  Thus, the facts found beyond a reasonable doubt in the criminal case are identical to the facts used by the SEC to establish a violation of § 17(a), and issue preclusion will apply with equal force to the SEC's claims under § 10(b) of the Exchange Act and § 17(a) of the Securities Act.

The SEC also argues that the facts determined in the criminal case establish Gordon's liability under §§ 5(a) and 5(c) of the Securities Act.  Section 5 makes it unlawful to sell or offer for sale a security without a registration statement.  15 U.S.C. § 77e; SEC v. Cavanaugh, 445 F.3d 105,

111 (2d Cir. 2006).  To establish a prima facie case under § 5, the SEC must show that "(1) the defendant directly or indirectly sold or offered to sell securities; (2) through the use of interstate transportation or communication and the mails; (3) when no registration statement was in effect." SEC v. Calvo, 378 F.3d 1211, 1214 (11th Cir. 2004).  In the criminal case, the government alleged that Gordon sold DPRK and NLST stock and that he relied on false opinion letters to facilitate the removal of trading restrictions on DPRK and NLST stock.  Dkt. # 84-1, at 9-10.  Mark Lindberg, one of Gordon's co-conspirators, testified in the criminal case that DPRK and NLST had not made any filings with the SEC when the shares were offered for sale.  United States v. George David Gordon et al., 09-CR-13-JHP (N.D. Okla.), Dkt. # 383, at 61; Dkt. # 400, at 229.  Gordon argued that these stocks were exempt from registration requirements and the jury was instructed on this defense.   United States v. George David Gordon et al., 09-CR-13-JHP (N.D. Okla.), Dkt. # 222 at 83-84.  However, the jury rejected Gordon's defense and convicted him on all criminal charges submitted to the jury.   Gordon does not dispute that his co-conspirators used interstate communications to promote DPRK and NLST stock or that he personally sold or offered these stocks for sale. Dkt. # 96, at 5.  Gordon argues that DRPK and NLST stock were exempt from the SEC's registration requirements, but he is foreclosed from arguing that DRPK and NLST stocks were subject to a valid exemption based on the jury's verdict.  The jury's verdict in the criminal case conclusively establishes all of the facts needed to hold Gordon liable under § 5 of the Securities Act.

Gordon argues that the criminal case has not been fully adjudicated, because he has appealed his convictions and the criminal judgment is not final.  Dkt. # 96, at 9-10.  Gordon's appeal of the criminal judgment does not affect the finality of the judgment for the purpose of applying issue preclusion in this case.  W.F.M., Inc. v. Cherry County, Nebraska, 279 F.3d 640, 644 (8th Cir.

13

2002); In re Kane, 254 F.3d 325, 328 (1st Cir. 2001); Ruyle v. Continental Oil Co., 44 F.3d 837, 846 (10th Cir. 1994). In fact, the availability of an appeal in the criminal case shows that the decision in the prior case was not interlocutory or tentative and that the criminal judgment should be treated as final. Vardon Golf Co., Inc. v. Karsten Manufacturing Corp., 294 F.3d 1330, 1334 (Fed. Cir. 2002). The criminal judgment constitutes a final judgment for the application of issue preclusion, and the SEC has established this element.

The final element that the SEC must establish for the application of issue preclusion is that Gordon had a full and fair opportunity to litigate the issues in the criminal case. Gordon will be found to have had a full and fair opportunity to litigate the issues if he "had the chance to present evidence and mount a defense." Blackwell, 477 F. Supp. 2d at 901. In the criminal case, Gordon's attorneys filed a lengthy motion to dismiss the charges against Gordon and requested an evidentiary hearing on Gordon's allegations that the government illegally seized assets that could be used to fund Gordon's defense. United States v. George David Gordon et al., 09-CR-13-JHP (N.D. Okla.), Dkt. # 79. Gordon also claimed that the illegal seizure of evidence violated his constitutional rights and prevented him from defending himself against the criminal charges. The motion to dismiss was denied without a hearing, but Gordon's attorneys filed a proffer of evidence that would have been presented at an evidentiary hearing. Id., Dkt. ## 139, 140, 141. Gordon's attorneys later clarified that the evidentiary proffer was intended to be a request for reconsideration (id., Dkt. # 147) and they also filed an interlocutory appeal (id., Dkt. # 142). Gordon and Clark filed a motion to dismiss (id., Dkt. # 162) based on the Speedy Trial Act, 18 U.S.C. § 3161, but that motion was also denied. After 15 days of trial, Gordon was convicted of 23 criminal charges. The government called 15 witnesses, and Gordon's attorneys cross-examined each of those witnesses. Gordon did not call any

14

witnesses in his own defense, but his attorneys moved for a judgment of acquittal at the close of the government's case. Id., Dkt. # 392, at 4-27. Gordon's attorney also made a closing argument. Id., Dkt. # 393, at 163-228. The record shows that Gordon was given a chance to present evidence and challenge the indictment before and during trial, and Gordon has not identified any impediment to defending against the criminal charges. Gordon argues that he could have more vigorously defended himself if the government had not improperly seized his assets, but Gordon fails to mention that his attorneys continued to represent him even after Gordon ran out of funds with which to pay them. See id., Dkt. # 131 (judge in the criminal case denied motion to withdraw filed by Gordon's attorneys and ordered them to represent Gordon through the completion of the criminal case). Gordon also fully litigated his constitutional claims concerning the alleged illegal seizure of evidence, and Gordon's claims were not a basis to dismiss the criminal charges. The Court has fully reviewed the record from the criminal case, and it is clear that Gordon had a full and fair opportunity to litigate every relevant factual and legal issue in the criminal case.

The SEC has met its burden to prove each element necessary for the application of issue preclusion, and the facts established by Gordon's criminal convictions are sufficient to hold Gordon liable for civil violations of § 10(b) of the Exchange Act and Rule 10b-5 and for violations of §§ 5(a), 5(c), and 17(a) of the Securities Act. The Court will consider Gordon's objections to the SEC's requests for relief separately, but Gordon may not relitigate factual issues that were previously resolved against him.[4]

---

[4]     Gordon's counterclaim for the production of documents (Dkt. # 38) is moot based on the Court's finding that Gordon is liable to the SEC on all claims alleged in the complaint. The Court has found that Gordon is precluded from relitigating issues decided in the criminal case and it is not necessary for the SEC to produce documents that might assist Gordon in contesting the SEC's factual allegations.

15

**B.**

Gordon argues that the amount of disgorgement sought by the SEC overrepresents his role in the alleged misconduct and it would violate the United States Constitution to impose a civil fine in light of the money judgment entered in the criminal case. Dkt. # 96, at 15-22. The SEC responds that Gordon's liability for disgorgement will be offset by any amounts recovered in the criminal case and that defendant's arguments as to the alleged unconstitutionality of civil monetary fines are meritless. Dkt. # 100, at 6-7.

Before considering Gordon's constitutional arguments, the Court will initially consider Gordon's argument that the amount of the criminal money judgment does not provide an accurate basis for determining the amount of disgorgement. Disgorgement is an equitable remedy "designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable." SEC v. First Pacific Bancorp, 142 F.3d 1186, 1191 (9th Cir. 1998). "Because such calculations are not capable of exactitude, any risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty." SEC v. Haligiannis, 470 F. Supp. 2d 373, 384 (S.D.N.Y. 2007). Gordon cites United States v. Nacchio, 573 F.3d 1062 (10th Cir. 2009), and argues that the Tenth Circuit has limited disgorgement and civil fines to the net profits received by a particular party, rather than joint and several liability for the gross proceeds of the entire fraudulent scheme. Dkt. # 96, at 15-16. Nacchio is inapplicable to the calculation of Gordon's liability for disgorgement or a civil monetary fine. In Nacchio, the Tenth Circuit interpreted the plain language of United States Sentencing Guideline § 2F1.2 and determined that the defendant's gain resulting from the offense, rather than the victims' losses or the defendant's net profits, should be used to calculate a defendant's gain for the purpose on a sentencing

enhancement under § 2F1.2.  Id. at 1071-72.  Although the Tenth Circuit referenced civil disgorgement penalties when considering how to measure a defendant's "gain," the Tenth Circuit did not hold that net profits is the proper means to determine the amount of disgorgement in a civil case.  Id. at 1079-80.

Gordon raised these same arguments in the criminal case and the court found that the government met its burden to prove that the amount of $43,927,809.95 represented Gordon's profits from his illegal conduct.  Dkt. # 313.  The sentencing judge accepted the government's argument that this amount represented the net profits, rather than the gross proceeds, of Gordon's illegal conduct, and Gordon's arguments concerning Nacchio were considered and rejected as a basis for the reduction of the amount of the money judgment in the criminal case.  See United States of America v. Gordon et al., 09-CR-13-JHP (N.D. Okla.), Dkt. # 292, at 11-12 (government argued that it offered evidence at trial establishing that $43,927,908.95 represented Gordon's net profits and Gordon failed to meet his burden under Nacchio to produce evidence of his costs or losses).  Gordon also fails to make any specific argument or offer any evidence that would assist the Court in determining a reduced amount of disgorgement.  See Dkt. # 96, at 15-17.  Once the SEC shows that the amount of disgorgement sought is a reasonable approximation of defendant's ill-gotten gains, the burden shifts to the defendant to prove that the SEC's estimate is not reasonable.  SEC v. Calvo, 378 F.3d at 1217.  Defendant's vague and factually unsupported arguments do not demonstrate that the SEC's approximation of the amount of disgorgement is unreasonable.  The Court will rely on the amount of the criminal money judgment, or $43,927,809.95, minus any amounts recovered by the government in forfeiture proceedings, for a total of $40,072,806.97, to establish the amount of defendant's liability for disgorgement.  The Court will also exercise its discretion to make the

disgorgement order joint and several as to Gordon, Lankford, and Sheptycki.  See SEC v. AbsoluteFuture.com, 393 F.3d 94, 97 (2d Cir. 2004); Calvo, 378 F.3d at 1215.  The government has shown that Gordon had a close relationship with the others involved in the fraudulent "pump and dump" scheme, and Gordon has not produced evidence that would allow for apportionment of the disgorgement order.  SEC v. Hughes Capital Corp., 124 F.3d 449, 455 (3d Cir. 1997).

A civil fine is authorized under 15 U.S.C. § 78u(d)(3), and the SEC asks the Court to impose a third tier fine under the statutory scheme.  The Court may order a defendant to pay $130,000[5] or the "gross amount of pecuniary gain to such defendant" if the defendant's violation of federal securities laws "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "such violation directly or indirectly resulted in substantial losses or created significant risk of losses to other persons."  15 U.S.C. § 78u(d)(3).  The jury in the criminal case found Gordon guilty of criminal violations of § 10b-5, and this establishes that defendant's conduct "involved fraud, deceit, [or] manipulation."  There is no question that defendant's conduct actually caused substantial losses to investors, and the SEC has shown that both elements necessary for imposition of a third-tier fine are satisfied.  The Court has already determined that amount of the criminal monetary judgment provides a reasonable estimate of the amount of pecuniary gain to defendant.  Thus, the Court may impose a fine in the "gross amount of pecuniary gain" to defendant unless defendant can show that such a fine is unconstitutional or unwarranted for other reasons.  However, the SEC does not expressly request a fine for the gross amount of defendant's pecuniary gain, and the Court finds that such a fine would potentially prevent Gordon from making payments

---

[5]     By statute, the maximum third tier fine is $100,000.  15 U.S.C. § 78u(d)(3).  This amount has been adjusted for inflation and the current maximum third tier fine is $130,000.  17 C.F.R. § 201.1002.

toward his criminal money judgment, the restitution order in the criminal case, or the disgorgement ordered in this case.  See Dkt. # 84, at 20 (SEC requests a third-tier fine but offers no argument as to the amount of the fine).  Gordon's conduct did cause substantial monetary losses to investors and he was an integral part of the fraudulent scheme, and a third tier fine for the maximum amount of $130,000 is appropriate.[6]

Gordon claims that imposition of disgorgement or a civil penalty would be duplicative of the money judgment entered in the criminal case, and a civil penalty would constitute a second criminal punishment in violation of the Double Jeopardy Clause of the Fifth Amendment.[7]  Dkt. # 96, at 19. The SEC responds that a civil fine is remedial in nature and does not qualify as a criminal punishment.  Dkt. # 100, at 7.  The Double Jeopardy Clause provides that no person "shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V. The Double Jeopardy Clause "protects only against the imposition of multiple criminal punishments for the same offense."  Hudson v. United States, 522 U.S. 93, 99 (1997).  However, a civil remedy

---

[6]    The Court is aware that it ordered Lankford and Sheptycki to pay the gross amount of their pecuniary gain in their respective default judgments.  See Dkt. ## 68, 94.  Lankford and Sheptycki were fugitives in the criminal case.  Thus, neither Lankford or Sheptycki is currently subject to any criminal penalties and both failed to contest the SEC's requested fine by virtue of their default.  By contrast, Gordon is subject to substantial criminal penalties and a restitution order, and he does challenge the imposition of a fine in the amount of his gross pecuniary gain.

[7]    Gordon makes a related argument that the SEC is collaterally estopped from seeking disgorgement, because the government already sought and obtained a money judgment against Gordon in the criminal case.  Dkt. # 96.  He claims that this case "represents an unconscionable attempt at double dipping on an individual that is already bankrupt."  Dkt. # 23.  Unless the SEC is attempting to impose a second criminal punishment on defendant, the prior criminal case does not prevent the SEC from seeking civil remedies from defendant and collateral estoppel does not bar a subsequent civil enforcement proceeding.  The Court will consider defendant's collateral estoppel argument as an aspect of his double jeopardy defense to disgorgement or civil fines.

may constitute a criminal punishment if it is "so punitive that we deem it criminal in nature." Smith v. Dinwiddie, 510 F.3d 1180, 1187 (10th Cir. 2007).  The Court must first consider whether the legislature intended the particular punishment to be civil or criminal in nature. Simpson v. Bouker, 249 F.3d 1204, 1212 (10th Cir. 2001).  Even if the legislature intended for a punishment to be civil in nature, the Court "must consider whether the statutory scheme is 'so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." Id. (quoting Hudson, 522 U.S. at 99).  In Hudson, the Supreme Court found that the factors listed in Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963), provide "useful guideposts" for lower courts to consider and identified the following seven factors:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

Hudson, 522 U.S. at 99.  These factors must be considered in relation to the statute creating the penalty and "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Femedeer v. Haun, 227 F.3d 1244, 1248 (10th Cir. 2000) (quoting Hudson, 522 U.S. at 99).

The Court will consider Gordon's arguments as to disgorgement and civil penalty separately, because each remedy serves a distinct purpose.  Disgorgement "primarily serves to prevent unjust enrichment" and this remedy may not be used solely to punish a defendant. SEC v. First City Financial Corp., Ltd., 890 F.2d 1215, 1231 (D.C. Cir. 1989).  The Court has already determined that the amount of disgorgement sought by the SEC is a reasonable measure of the Gordon's profits from

his illegal conduct, and Gordon has not shown that the SEC is seeking disgorgement solely to punish him. Defendant has cited no authority suggesting that a prior criminal conviction for insider trading violations precludes the later imposition of a civil award of disgorgement, and the Court finds that an award of disgorgement based on the amount of a defendant's illegal profits may not be considered a second punishment triggering application of the Double Jeopardy Clause. See SEC v. Lorin, 869 F. Supp. 1117 (S.D.N.Y 1994) ("disgorgement merely returns the wrongdoer to the status quo before any wrongdoing occurred" and may not be labeled a fine or penalty under the Double Jeopardy Clause).

The mere fact that a fine under § 78u is facially a civil penalty does not automatically dispose of defendant's double jeopardy argument as to the imposition of a fine, and the Court will consider whether the imposition of a civil fine would constitute multiple punishments for the same conduct in violation of the Double Jeopardy Clause. Section 78u expressly states that any fine under this section is a "civil penalty" and this statute facially creates a civil penalty for violations of federal securities laws. The mere imposition of a civil penalty for securities fraud does not create a double jeopardy problem and Gordon must show by the clearest proof that the fine requested by the SEC is punitive in nature. United States v. Van Waeyenberghe, 481 F.3d 951, 959 (7th Cir. 2007). Defendant argues that the accumulation of the criminal money judgment and restitution award, disgorgement award, and civil fine would total over $150,000,000, and the combined amount of the various monetary penalties shows that the third tier fine sought by the SEC is intended to serve as a punishment. Dkt. # 96, at 19-20. The Court has declined to impose a fine in the amount of defendant's gross pecuniary gain, and defendant's argument is partially moot. However, defendant objects to any fine as a violation of his rights under the Double Jeopardy Clause, and his argument

is not entirely moot.  Id. at 20.  Defendant offers no argument as to any of the Hudson factors, and the Court will not construct an argument on defendant's behalf that the statutory scheme allowing for civil penalties is so punitive that it must be regarded as a criminal punishment.  In any event, no court has found that a civil penalty under § 78u constitutes a criminal punishment that would trigger the protection of the Double Jeopardy Clause.  SEC v. Palmisano, 135 F.3d 860, 865-66 (2d Cir. 1998) (applying the Hudson factors and rejecting argument that civil penalty qualified as a criminal punishment); SEC v. Credit Bancorp, Ltd., 738 F. Supp. 2d 376 (S.D.N.Y. 2010) (same).  The Court agrees with the double jeopardy analysis of Palmisano and finds that the Double Jeopardy Clause does not preclude the award of a third tier fine against defendant.

Defendant argues that a civil penalty in the amount sought by the SEC would violate the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.[8]  The Eighth Amendment states that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. amend. VIII.  "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality."  United States v. Wagoner County Real Estate, 278 F.3d 1091, 1099 (10th Cir. 2002) (quoting United States v. Bajakajian, 524 U.S. 321, 334 (1998)).  Defendant participated in a fraudulent scheme resulting in millions of dollars of investor losses, and he personally received a financial benefit will in excess of $130,000.   A fine of $130,000 is clearly not disproportional to the harm caused by Gordon's

---

[8]     Gordon also mentions the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, but he offers no separate analysis under these clauses.  Dkt. # 96, at 20-22.  Gordon's argument appears to be that the civil fine is excessive in light of his individual gain from the illegal conduct, and this argument is most appropriately considered under the Excessive Fines Clause.

conduct or his personal financial gain, and the imposition of a civil penalty does not violate the Excessive Fines Clause.

The SEC requests prejudgment interest, in the amount of $10,307,489.92, on the award of disgorgement using the rate employed the Internal Revenue Service for the underpayment of taxes. Dkt. # 84, at 18-19. The Court has the equitable authority to award prejudgment interest on an order of disgorgement. SEC v. First Jersey Securities, Inc., 101 F.3d 1450 (2d Cir. 1996); SEC v. HedgeLender LLC, ___ F. Supp. 2d ___, 2011 WL 1237937 (S.D. Ohio Mar. 29, 2011). "Prejudgment interest, like disgorgement, prevents a defendant from profiting from his securities violations." SEC v. Sargent, 329 F.3d 34, 40 (1st Cir. 2003). The SEC has adopted the tax underpayment rate for prejudgment interest in its administrative proceedings and courts routinely apply this rate when awarding prejudgment interest on an order of disgorgement. SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1099 (9th Cir. 2010); SEC v. One or More Unknown Traders in the Common Stock of Certain Issuers, ___ F. Supp. 2d ___, 2010 WL 3417657 (D.D.C. Aug. 31, 2010). Gordon does not contest the SEC's request for prejudgment interest in his response to the SEC's motion for summary judgment. The Court finds that prejudgment interest should be awarded to prevent Gordon from profiting from his illegal scheme. The Court has reviewed plaintiff's proposed calculation of prejudgment interest and finds that it is reasonable. See Dkt. # 84-1, at 92-94. Therefore, the SEC will be awarded prejudgment interest in the amount of $10,307,489.92 on the award of disgorgement.

The SEC requests an injunction preventing Gordon from participating in the sale of penny stocks, such as the Target Stocks, or from violating federal securities laws. A violation of federal securities laws, particularly knowing violations of § 10(b) of the Exchange Act and § 17(a) of the

23

Securities Act, may justify the issuance of an injunction against a defendant if the SEC "demonstrates a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future." SEC v. Pros Int'l, Inc., 994 F.3d 767, 769 (10th Cir. 1993). The Court must consider several factors to determine if a defendant is likely to commit future violations of federal securities laws, including "the seriousness of the violation, the degree of scienter, whether defendant's occupation will present opportunities for future violations and whether defendant has recognized his wrongful conduct and gives sincere assurances against future violations." Id. Gordon's actions caused millions of dollars of investor losses, and he committed serious violations of securities laws. Gordon participated in a complex scheme to defraud investors and there is no dispute that he acted intentionally and with intent to defraud. Gordon was formerly an attorney in Tulsa, Oklahoma, but he was disbarred in May 2011. State ex rel. Oklahoma Bar Ass'n v. Gordon, 255 P.3d 423 (Okla. 2011) (disbarring Gordon based on his criminal convictions and noting that Gordon failed to enter an appearance or file a response in the disbarment proceedings). While Gordon is no longer authorized to practice law, he possesses considerable expertise in the area of securities law and it is reasonable to infer that he could at some future time seek employment in the securities field. Finally, Gordon has not recognized the wrongfulness of his conduct and he has given no assurance that he will refrain from future violations of federal securities laws. Upon consideration of these factors, the Court finds that the SEC's request for an injunction should be granted, because Gordon has committed serious violations of federal securities laws and there is a substantial likelihood that he will commit future violations without an injunction.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. # 84) is **granted**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that Gordon's counterclaim (Dkt. # 38) for the production of documents is **moot**.

**DATED** this 28th day of September, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT